STATE OF NEBRASKA, APPELLEE, V. MONTE K. MOWRY, APPELLANT.
512 N.W.2d 140

Filed February 25, 1994.   No. S-92-231.

Byron M. Johnson, Scotts Bluff County Public Defender, and Bernard J. Straetker for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Fahrnbruch, and Lanphier, JJ., and Grant, J., Retired.

Lanphier, J.

Appellant, Monte K. Mowry, petitioned this court to review the decision of the Nebraska Court of Appeals which affirmed his convictions for possession of methamphetamine with intent to distribute and conspiracy to distribute methamphetamine. The Court of Appeals recited two rules for reviewing convictions based upon circumstantial evidence, which rules require an appellate court (1) to make every inference in favor of the State and (2) to make every inference in favor of the defendant. The Court of Appeals chose the former rule and affirmed Mowry's convictions. We granted further review to address Mowry's assertion that the Court of Appeals erred by using the wrong standard to review his claim that the circumstantial evidence used to convict him was insufficient. Although, as Mowry claims, the Court of Appeals applied the wrong standard, we affirm the Court of Appeals' decision, since under the proper standard the circumstantial evidence used to convict him was sufficient.

## BACKGROUND

On February 13, 1991, a package, containing what was later determined to be methamphetamine, was mailed from Palm Desert, California, to the Rustic Bar & Grill in Morrill, Nebraska. Except for the name of the sender, Byron Green, the return address on the package had been torn off. En route, the package, because of its suspicious nature, was intercepted at the Denver airport by airline agents who called the Denver police. The Denver police, after informing the Scottsbluff Police Department, allowed the package to continue on its journey. The package was then flown to Scottsbluff, where police took possession of the package.

On February 15, 1991, a police officer, dressed as a United Parcel Service deliveryman, took the package to the Rustic Bar & Grill, where Nancy Kowalski received it. Kowalski was arrested, and police searched her apartment. In addition to finding drug paraphernalia and over $12,000 in cash, police found a receipt for a money order. Subsequent investigation

revealed that the money order, which originated at a Western Union office in Scottsbluff, was cashed in Palm Desert, California, by a man named "J.D. Painter."

Meanwhile, the investigation in California revealed that Byron Green, whose name was on the package, had a telephone billing address of 74611 Shadow Hills Road, Palm Desert, California. Police obtained a warrant to search this address and the current residents, Karen and Monte Mowry. Telephone bills addressed to Byron Green were found under a bed in the guestroom. These bills revealed that calls had been made to Kowalski's private phone and to the Rustic Bar & Grill. A calling card in the name of Byron Green was found in Monte Mowry's wallet. A notebook containing names of some Scottsbluff and Gering residents was found. Next to each name was a number which officers testified they thought stood for a quantity of drugs that each person was willing to buy. Two machines used to heat-seal plastic bags were recovered. A scale with methamphetamine residue was found. A Ziploc bag containing pure powder ephedrine, a controlled substance in California, was found. Additionally, a can of acetone, a jug of muriatic acid, and a large quantity of ephedrine tablets were discovered. While each of these items has a legitimate use, all can be used in the manufacture of methamphetamine. A "recipe" for manufacturing methamphetamine was also discovered in the Mowry home.

Police testified that they conducted an extensive search to determine whether Byron Green existed, but could find no such person. However, a witness for the defense, Bruce Taylor, testified by deposition that he had met Byron Green on two occasions, once at the Mowrys' apartment and once at a bar in Palm Desert, California. Taylor also testified that he tried to sell a lithograph to friends of the Mowrys. He further stated that J.D. Painter, on behalf of the Mowrys' friends, delivered $1,125 to him as part of a deposit on the lithograph. Robyn Cisneros, Karen Mowry's sister, testified that the notebook found in the Mowrys' apartment was hers and that the writing contained within was hers, too. She testified that she sold cocaine and that the names and numbers in the notebook concerned her dealings.

Monte Mowry, Karen Mowry, and Kowalski were arrested and tried together before a jury, which returned guilty verdicts on all counts. The appeals of Karen and Monte Mowry were consolidated. The Court of Appeals vacated and dismissed Karen Mowry's case, finding the evidence against her insufficient to sustain her convictions. The Court of Appeals affirmed the convictions of Monte Mowry (hereinafter Mowry), but remanded the case for resentencing.

## STANDARD OF REVIEW

Despite Mowry's claim that the circumstantial evidence against him was insufficient to support the jury's guilty verdicts, his convictions were affirmed by the Court of Appeals. The Court of Appeals in its opinion stated there were two apparently conflicting rules for reviewing a conviction based on circumstantial evidence: to make every inference in favor of the State or to make every inference in favor of the accused. In affirming Mowry's convictions, the Court of Appeals applied the following standard of review: "In criminal cases, circumstantial evidence is to be treated the same as direct evidence, and the State, upon review, is entitled to have all conflicting evidence, direct and circumstantial, and the reasonable inferences which can be drawn from the evidence viewed in its favor." *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 400, 488 N.W.2d 546, 548 (1992). Accord *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992). See, also, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992); *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991); *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990); *State v. Nesbitt*, 226 Neb. 32, 409 N.W.2d 314 (1987); *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). Mowry, however, asserts that the other standard of review referred to in the Court of Appeals opinion should have been used: In determining the sufficiency of circumstantial evidence, " ' " '[a]ny fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused.' " ' " *State v. Ruiz*, 241 Neb. 693, 698, 489 N.W.2d 865, 867 (1992). See, also, *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992); *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992); *State v.*

*Earlywine*, 191 Neb. 533, 215 N.W.2d 895 (1974); *State v. Faircloth*, 181 Neb. 333, 148 N.W.2d 187 (1967); *Reyes v. State*, 151 Neb. 636, 38 N.W.2d 539 (1949).

Recently, after the Court of Appeals decided this case, this court reconciled the two positions. In *State v. Covarrubias*, 244 Neb. 366, 374, 507 N.W.2d 248, 253 (1993), we explained that the rule enunciated in the *LaFreniere* line of cases

> requires a reasonable inference from circumstantial evidence to be taken most favorably to the accused when circumstantial evidence is the only basis upon which to support a conviction and the circumstantial evidence is reasonably susceptible of two interpretations, one of guilt and the other of nonguilt, and neither inference is stronger than the other.

When there is direct evidence in addition to circumstantial evidence, all reasonable inferences deducible from the evidence are to be viewed in the light most favorable to the State. *Id.*

Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists. *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993). It is undisputed that circumstantial evidence provides the only basis upon which to support each of Mowry's convictions. This case on appeal should have been reviewed for sufficiency of the evidence under the standard found in the line of cases beginning with *Reyes v. State, supra*, and ending with *State v. Ruiz, supra*. See *State v. Covarrubias, supra*.

While the State need not disprove every hypothesis except that of guilt, an accused is presumed to be not guilty and cannot be convicted unless the State has proved the accused guilty beyond a reasonable doubt. *State v. LaFreniere, supra*. Also, a conviction cannot be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere fact that some unfavorable circumstances are not satisfactorily explained. *State v. Ruiz, supra*.

## SUFFICIENCY OF THE EVIDENCE

With respect to the charge of intentionally distributing

methamphetamine, the evidence linking Mowry to the package containing methamphetamine is circumstantial. Byron Green was the name on the package. Mowry had a calling card in the name of Byron Green. The phone at Mowry's residence was registered to Byron Green. Phone bills found at Mowry's residence showed that calls had been made to Kowalski's home and to the Rustic Bar & Grill. A baggie containing empty bindles was found in Mowry's residence. The package containing methamphetamine was sent from a location near Mowry's residence. Many of the ingredients required to manufacture methamphetamine were found at Mowry's residence along with a recipe for methamphetamine. A scale with methamphetamine residue was found at Mowry's residence. Police officers from Nebraska and California testified that after an extensive computer search, no person named Byron Green could be located in either state.

The reasonable inferences deducible from the circumstantial evidence presented supporting Mowry's conviction for intentional distribution of methamphetamine were that Mowry was acting under the alias of Byron Green and that Mowry sent the package to Kowalski.

The conspiracy charge was also based on circumstantial evidence. In addition to that evidence mentioned above in support of the conviction for distribution of methamphetamine, the record reflects that methamphetamine was sent from a location in Palm Desert, California, near Mowry's residence, to Kowalski in Nebraska. Methamphetamine divided into paper bindles was discovered in Kowalski's apartment along with large amounts of cash.

The reasonable inference supporting Mowry's conviction on this charge was that Mowry was conspiring with Kowalski to distribute methamphetamine in Nebraska.

There are no reasonable inferences of nonguilt as strong as the reasonable inferences supporting guilt which arise from the circumstantial evidence presented in this case. We are required to accept the inference most favorable to the accused only when there is a reasonable inference of nonguilt which is as strong as the reasonable inference supporting guilt. *State v. Covarrubias*, 244 Neb. 366, 507 N.W.2d 248 (1993). See, also, *State v.*

*Hulshizer, post* p. 244, 512 N.W.2d 372 (1994). The circumstantial evidence introduced by the State at trial is sufficient to support the reasonable inferences necessary to sustain the jury's guilty verdicts. We, therefore, affirm the judgment of the Court of Appeals.

AFFIRMED.