IN RE INTEREST OF CHAD S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. CHAD S., APPELLANT.
639 N.W.2d 84

Filed February 8, 2002. No. S-01-271.

Sara L. Komen, of Nebraska Legal Services, for appellant.

Gary E. Lacey, Lancaster County Attorney, and Shellie D. Sayers for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This action was brought by the State of Nebraska in the separate juvenile court of Lancaster County, wherein the trial court found that Chad S. was a person as defined by Neb. Rev. Stat. § 43-247(1) (Reissue 1998), a juvenile who has committed an act other than a traffic offense which constitutes a misdemeanor and infraction under the laws of this state.

This appeal does not involve the trial court's finding as to Chad's status under § 43-247. The only issue is Chad's motion for the trial judge to recuse herself, claiming an improper ex parte conversation between the trial judge and the probation officer regarding the disposition of the case, and the trial court's overruling of that motion.

## BACKGROUND

The State, in its second and third supplemental petitions, alleged that Chad engaged in conduct violative of Neb. Rev. Stat. §§ 28-310(1) (Reissue 1995) (third degree assault) and 28-416(13)(a) (Cum. Supp. 2000) (possession of marijuana weighing 1 ounce or less). The allegations came before the trial court for formal hearing in December 2000. At the conclusion of trial, the court took both petitions under advisement. The trial court then entered an order finding that Chad was a child as defined by § 43-247 and finding that the allegations set forth in the second and third supplemental petitions were true beyond a reasonable doubt. Disposition was scheduled for January 11, 2001, pending completion of the probation office's predisposition investigation report.

At the disposition hearing, Chad's attorney elicited testimony from Gary Waldron, the Lancaster County juvenile intensive supervision probation officer, concerning the services that had been rendered with regard to Chad, as well as his recommendation for disposition. Waldron recommended that Chad be committed to the youth center in Kearney. Waldron also testified that he had shared his recommendation with the trial court earlier that day in chambers.

Chad's attorney then elicited testimony from Judy Riddle, a Lancaster County juvenile probation officer, concerning her involvement in the case. Riddle testified that she was a probation officer assigned to the case and that she authored the update to the predisposition investigation report. The briefs of the parties and the bill of exceptions indicate that Riddle authored the original predisposition investigation report as well. Riddle recommended that Chad be committed to the youth center in Kearney.

At the conclusion of the testimony, Chad's attorney made a motion requesting that the trial judge recuse herself due to her in-chambers conversation with Waldron. Chad's attorney argued that ex parte discussions with noncourt employees like Waldron were forbidden under Neb. Code of Jud. Cond., Canon 3 (rev. 2000), and that thus, recusal was appropriate. The trial court requested that Chad's attorney provide authority specifically addressing communications between probation officers and the court, and it subsequently took the motion under advisement to allow such authority to be produced.

The motion for recusal was subsequently overruled by the trial court. The trial court cited to Neb. Rev. Stat. § 29-2249 (Reissue 1995) and noted that while the juvenile probation office is part of the Office of Probation Administration, the Office of Probation Administration is created within the judicial branch of government and is directly responsible to the Nebraska Supreme Court. Probation officers regularly prepare reports for youths who have been adjudicated before the courts. Thus, they are not parties, but court personnel.

The trial court also held that there was no evidence or suggestion by counsel that additional information was provided by Waldron during the in-chambers conversation that was not otherwise included in the probation file and available to counsel. The court stated that the mere fact that Waldron, a probation officer, communicated with the court regarding his recommendation outside the presence of counsel is not, in and of itself, a ground for recusal.

Chad appeals the decision of the trial court overruling his motion for recusal and its finding that communications between probation officers and the court at the disposition stage of a juvenile case were appropriate.

## ASSIGNMENTS OF ERROR

Chad assigns that the trial court erred in (1) finding that probation officers are "court personnel," which would permit judges and probation officers to have ex parte discussions regarding the court's disposition of a case; (2) finding that Waldron's conversation with the court regarding his recommendations as to disposition, without counsel present at the time of conversation, is not an ex parte conversation in violation of the judicial canons of ethics and grounds for recusal; (3) finding that Chad was required to adduce evidence of the content of the ex parte conversation between the court and Waldron; and (4) permitting an ex parte conversation with Waldron regarding disposition, as Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2000) and case law provide notice of the form and content of disposition information that must be provided to the parties and to the court.

## STANDARD OF REVIEW

 Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach conclusions independent of the trial court's findings. *In re Interest of Artharena D.*, 253 Neb. 613, 571 N.W.2d 608 (1997). In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's ruling. *Id.*

## ANALYSIS

 The four assignments of error all relate to an alleged ex parte conversation between Waldron and the trial judge. An "ex parte communication" occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party. *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999).

The Nebraska Code of Judicial Conduct, Canon 3B(7), states:

> A judge shall not initiate, permit or consider ex parte communications or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
>
> . . . .

(c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities . . . .

If, therefore, we conclude that a probation officer is "court personnel," whose function it is to aid the judge in carrying out his or her adjudicative functions, then any conversation or communication between the probation officer and the judge is not an ex parte communication in violation of the Nebraska Code of Judicial Conduct, and such a conclusion would negate the need for recusal.

The status of a probation officer can be determined from a review of the following Nebraska statutes:

Neb. Rev. Stat. § 29-2258 (Reissue 1995), describing the duties of district probation officers, states that probation officers shall "(1) [m]ake presentence and other investigations, as may be required by law or directed by a court in which he or she is serving" and "(10) [m]ake such reports as required by the administrator, the judges of the probation district in which he or she serves, or the Supreme Court."

Section 29-2249 specifically states that the Office of Probation Administration is a part of the judicial branch. "The Office of Probation Administration is hereby created within the judicial branch of government and directly responsible to the Supreme Court." *Id.*

Neb. Rev. Stat. § 29-2259(7) (Cum. Supp. 2000) states that the budget for the probation office shall be submitted to the Supreme Court for its approval.

A significant portion of a juvenile court judge's adjudicative responsibility includes determining what actions to take with reference to a juvenile at a disposition hearing. To aid the judge in carrying out his or her responsibility, the judge utilizes the presentence reports and the probation officer's recommendations. See, *State v. Jones*, 254 Neb. 212, 575 N.W.2d 156 (1998), *disapproved on other grounds, State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998); *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). Thus, it is the function of probation officers at the disposition phase of a proceeding to aid the judge in carrying out the judge's adjudicative responsibilities.

The statutes above demonstrate the close working relationship between probation officers and the court. The Office of

Probation Administration exists within the judicial system. Probation officers draft presentence reports at the direction of the court which the probation officer is serving, and courts have a definite influence as to the substance of the reports. We determine, based on the record in this case and the above-cited canon and statutes, that Waldron was "court personnel" of the separate juvenile court of Lancaster County.

Because in this case Waldron was "court personnel," conversation or communication between Waldron and the judge was not an ex parte conversation in violation of Canon 3B(7)(c). Therefore, Chad's remaining assignments of error are without merit.

## CONCLUSION

Having determined that Waldron is "court personnel," as that term is used in Canon 3B(7)(c) of the Nebraska Code of Judicial Conduct, it necessarily follows that any communication between Waldron and the trial judge was not an ex parte communication in violation of Canon 3B(7)(c). The ruling of the trial court, therefore, overruling Chad's motion for the judge to recuse herself because of the ex parte communication was correct and should be affirmed.

AFFIRMED.